FILED

2010 Jan-28  PM 04:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:08-CV-2150-RDP** |
| | } | |
| **JACK W. SWANN, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff, United States of America's Motion for Summary

Judgment.  (Doc. # 25).  The matter has now been fully briefed and is ripe for decision.  (Docs. # 26,

30, 32).

## I.     Facts.

 Defendants, Jack W. Swann, the former Director of the Jefferson County Environmental

Services Department, and his wife, Nila Pierce Swann, live at 645 Winwood Drive, Birmingham,

Alabama. (Doc. # 27, Ex. 1 at 4, Ex. 2 at 4-5).  Nila Swann is not employed and has not been

employed for over twenty years.  (Doc. # 27, Ex. 2 at 12-18).

Jack and Nila Swann purchased the property located at 641 Winwood Drive in 1977.  (Doc.

# 27,  Ex. 2 at 18-19).  In 1997, the Swanns purchased adjacent property located at 645 Winwood

Drive. (Doc. # 27, Ex. 2 at 12).  After making extensive renovations to the property at 645 Winwood

Drive, costing over $800,000, the Swanns moved to that property in May 2002.  (Doc. # 27, Ex. 2

at 5, 9, 12).

Frankie L. Pierce, Jack Swann's mother-in-law, now lives at 641 Winwood Drive,

Birmingham, Alabama. (Doc. # 27, Ex. 2 at 20-21).  On or about September 26, 2002, the Swanns

transferred 33% ownership in 641 Winwood Drive to Frankie L. Pierce for one dollar ($1.00).  (Doc. # 27, Ex. 2 at 20-21, Ex. 2 thereto).

At all times between at least January 1984 and October 25, 2006, a joint homeowner was only allowed to claim the homestead exemption on the property to the extent of their proportional interest in the property.  (Doc. # 31, Exs. 3 and 4).

On April 24, 2003, Jack Swann purported to reduce his equity in 641 Winwood Drive to one thousand dollars ($1,000.00), in exchange for Nila Swann's paying the cost to refinance the property. (Doc. # 27, Ex. 2 at 22, Ex 1 thereto).  The cost to refinance 641 Winwood Drive was $9,553.08. (Doc. # 27, Ex. 2 at 22, Ex 1 thereto).  However, this transaction was not immediately recorded. In fact, it was not recorded until September 28, 2006, the day the jury began deliberating in Jack Swann's criminal trial.  (Doc. # 27, Ex. 2 at 21-22, Ex 1, 3 thereto).

In 2005, Jack Swann, and other public officials of Jefferson County and various construction and engineering contractors, were indicted on charges of bribery, conspiracy to commit bribery, and related offenses stemming from a scheme to profit illegally at the county's expense. (Doc. # 27, Ex. 12).  Jack Swann's criminal trial commenced on September 18, 2006. (Doc. # 27, Ex. 12 at 13).  The jury began deliberating on the charges against Jack Swann on September 28, 2006.  (Doc. # 27, Ex. 12 at 14).  On October 2, 2006, the jury found Swann guilty on all but one of the charges against him.  (Doc. # 27, Ex. 12 at 14).

Based upon the jury's verdict and post-trial proceedings, Jack Swann is indebted to the United States for a criminal debt in the amount of a $250,000.00 fine and $355,533.00 in restitution, plus interest.  (Doc. # 27, Ex. 5).

The tax appraisal for tax year 2007 of 641Winwood Drive, which was completed in 2006, indicates that home has a total market value of $272,000.00. (Doc. # 27, Ex. 9).  The property had $191,000 dollars worth of encumbrances at the time of the 2007 appraisal; therefore, the full equity in 641 Winwood Drive at the time of the transfer was $81,000. (Doc. # 27, Exs. 10 and 11).

Jack Swann testified that, upon his conviction and incarceration, he left all financial transactions relating to this property (and otherwise) to his wife. (Doc. # 27, Ex. 1).  Nila Swann testified that the transfers at issue were made for tax purposes, *i.e.*, to maximize the allowable homestead exemption for her mother, Frankie Pearce.  (Doc. # 27, Ex. 2, Doc. # 31, Ex. 1).  This explanation, of course, begs the following questions:

(1)     Why was the transaction evidencing the reduction of Jack Swann's equity in 641 Winwood Drive, which allegedly occurred in 2003, not recorded to take effect for tax years 2003, 2004 or 2005?

(2)     Why was the 2003 transaction only finally recorded on the same day that the jury began deliberating Mr. Swann's fate in his criminal trial?

The parties have suggested two polar opposite explanations.  The Government contends that the transaction was a fraudulent attempt to avoid the debt owed to it.  On the other hand, the Swanns claim they were busy, and only finally got around to recording the transaction after the testimony in Mr. Swann's trial concluded,[1] and the deadline to make such changes for tax year 2006 approached at the end of September.

---

[1] The court notes that during Jack Swann's trial, the rule was invoked and because she was a witness, Mrs. Swann was precluded from attending the trial.  (Doc. # 27, Ex. 2 at 29).

II.    **Summary Judgment Standard.**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met her burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge her initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden

4

on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, she can satisfy her initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets her initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest

on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.    Discussion.

The United States contends that the Swanns' transfer of 641 Winwood Drive out of Jack Swann's name was fraudulent under Section 3304(b) of the Federal Debt Collection Procedures Act of 1990 ("FDCPA").  Section 3304(b) provides in relevant part:

(1)      [A] transfer made by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made, or the obligation is incurred, if the debtor makes the transfer or incurs the obligation-

    (A)      with actual intent to hinder, delay or defraud a creditor; or

    (B)       without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor -

        ...

        (ii)      intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(2)      In determining actual intent under paragraph (1), consideration may be given, among other factors, to whether-

    (A)      the transfer or obligation was to an insider;

    (B)      the debtor retained possession or control of the property transferred after the transfer;

    (C)      the transfer or obligation was disclosed or concealed;

    (D)      before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

    (E)      the transfer was of substantially all the debtor's assets;

    (F)      the debtor absconded;

    (G)     the debtor removed or concealed assets;

    (H)     the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

    (I)     the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

    (J)     the transfer occurred shortly before or shortly after a substantial debt was incurred; and

    (K)     the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

28 U.S.C. § 3304(b)(2).

Plaintiff's Motion for Summary Judgment seeks to have the court review the record before it and determine Mr. Swann's intent in making the subject transfers. The court acknowledges that many of the relevant factors support a conclusion that the transfer of Mr. Swann's ownership interest in 641 Winwood Drive was fraudulent. However, the court also finds that it would be necessary to make credibility decisions in order for the court to reach such a conclusion. Such credibility determinations are emphatically for the trier of fact, not the Rule 56 court. Therefore, after a careful review of the parties' submissions, the court finds that (1) on the present record before the court, there exist material issues of fact which preclude judgment as a matter of law, and (2) Plaintiff has not shown that it is entitled to judgment as a matter of law. Because genuine issues of material fact exist to be tried, summary judgment is not appropriate.

This case will be set for pretrial and trial by separate order.

7

**DONE** and **ORDERED** this _____28th_____ day of January, 2010.

 

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE